UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ELIZABETH ANN WATTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.  1:24 CV 52 RWS |
| | ) |
| LELAND DUDEK, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

Elizabeth Watts brings this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the Commissioner's decision denying her application for disability benefits under the Social Security Disability Insurance Program (SSDI), Title II of the Social Security Act, 42 U.S.C. §§ 401-434 and for benefits under the Supplemental Security Income Program (SSI), Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1385.  For the reasons set forth below, I will affirm the decision of the Commissioner.

## Procedural History

Plaintiff Elizabeth Watts was born on August 11, 1960.  (Tr. 250)  She is currently 64 years old.  Watts completed one year of college.  (Tr. 290)  In the past

several years before she applied for disability benefits Watts worked as a billing clerk for medical providers. (Tr. 296) Watts had employment earnings of $25,366.56 in 2020 and $5,124.32 in 2021. (Tr. 283) The last time she had gainful employment was on November 20, 2020. (Tr. 25.)

Watts protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on January 20, 2021. (Tr. 240-241) She alleged her disability began on November 30, 2020 (Tr. 250) Watts' applications were initially denied on April 8, 2021. (Tr. 110-111) The applications were denied again upon reconsideration on July 15, 2021. (Tr. 126-127) On September 21, 2021, Watts filed a request for a hearing before an Administrative Law Judge (ALJ). (Tr. 171-172) The ALJ held a hearing on March 22, 2023. (Tr. 19-38) In her Function Report, completed on March 4, 2021, Watts asserted that she was unable to work based on exhaustion every day from lack of sleep caused by fibromyalgia. In addition, her joints, muscles, and long bones in her legs and arms hurt. She has osteoarthritis which causes a frozen left shoulder and problems with her right ankle. (Tr. 304) Her Disability Report, completed on February 25, 2021, lists the following medical conditions that limit her ability to work: fibromyalgia, diabetes, heart valve issues, osteoarthritis in ankle and shoulder, ankles swell when walking, torn ligaments, bone chipping away, and cysts in legs. (Tr. 289) At the hearing before the ALJ,

Watts testified that in her work as a billing clerk she sat most of the time working on a computer. (Tr. 62-63) Watts stated that her left shoulder is frozen and that her insurance does not cover physical therapy that has been recommended by her doctors. This causes her pain and prevents her from reaching a keyboard. (Tr. 66-67) She testified that she has osteoarthritis in her right ankle and a doctor recommended a "fusion." (Tr. 73) She testified that she was diagnosed with fibromyalgia which caused her to get "real fuzzyheaded from time to time" and that there were days when she could not get out of bed. (Tr. 74) She takes monthly shots for her shoulder and ankle that really help. She stated that she needs physical therapy but cannot afford it. (Tr. 84)  She stated that she has gotten "really depressed" especially since she filed for disability, but she takes medication for her depression. (Tr. 75) Watts testified that she can prepare "one-pot" meals and is able to clean her one bedroom apartment. (Tr. 78) She can bathe herself with one hand. She can do her laundry but her sister pulls clothes out of the dryer, and she can fold smaller items. (Tr. 80-81) She is able to feed herself. Watts testified she tries not to take pain medication but will take tramadol three or four times a week to help her sleep. (Tr. 82) Sometimes she has a "bad time" trying to get a night's rest. (Tr. 82) Watts testified that she can walk for about a half hour and sit for an hour or so. (Tr. 87)

3

On April 17, 2023, the ALJ issued a decision finding that Watts was not disabled and that she could perform her past relevant work as an Insurance Clerk. (Tr. 32-33)  On April 17, 2024, the Appeals Council denied plaintiff's request for review.  (Tr. 1-6)  The ALJ's decision is now the final decision of the Commissioner.  42 U.S.C. §§ 405(g).

In this action for judicial review, Watts contends that the ALJ failed to properly evaluate Watts' mental limitations caused by her anxiety, depression, and fibromyalgia. (ECF # 8)  Watts requests that I reverse the Commissioner's final decision and remand this matter for further evaluation.  For the reasons that follow, I will deny Watts request to remand this matter for further proceedings.

**Medical Records and Other Evidence Before the ALJ**

With respect to the medical records and other evidence of record, I adopt Watts' statement of material facts (ECF # 8-1) as admitted by the Commissioner and the Commissioner's additional material facts (ECF # 9-2).  Additional facts will be discussed as needed to address the parties' arguments.

**Discussion**

A.   Legal Standard

To be eligible for disability insurance benefits under the Social Security Act, a plaintiff must prove that she is disabled.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health & Human Servs., 955 F.2d 552,

4

555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity (SGA).[1] If not, the disability analysis proceeds to the second step. In this step the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments,

---

[1] "Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. 'Substantial work activity' is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). 'Gainful work activity' is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience." (Tr. 12.)

5

meaning that which significantly limits his ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled and the analysis ends. If the claimant has a severe impairment the Commissioner then proceeds to the third step and determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. If the impairment is not equivalent to a listed impairment, then the Commissioner proceeds to the fourth step to determine whether the claimant can perform her past relevant work.[2] If so, the claimant is not disabled. If not, at the last step the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

    I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). "[Substantial evidence] means – and means only

---

[2] "The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965)." (Tr. 13.)

– such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (cleaned up). Determining whether there is substantial evidence requires scrutinizing analysis. Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. McNamara, 590 F.3d at 610.

When evaluating medical opinions and prior administrative medical findings, the ALJ will consider various factors, the "most important factors" being supportability and consistency. 20 CFR § 404.1520c(a). The ALJ must "articulate in his determination or decision how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in your case record." Id. at § 404.1520c(b).

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is

7

uncorroborated by objective medical evidence.  Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole.  See e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the subjective complaints, the ALJ is required to consider the factors set out by Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

Id. at 1322.[3]  When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding.  Casey v. Astrue, 503 F.3d 687, 696 (8th Cir. 2007).  However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  Hildebrand v. Barnhart, 302 F.3d 836, 838 (8th Cir. 2002).

---

[3] This was once referred to as a credibility determination, but the agency has now eliminated use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of an individual's character. However, the analysis remains largely the same, so the Court's use of the term credibility refers to the ALJ's evaluation of whether a claimant's "statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record." See SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); Lawrence v. Saul, 970 F.3d 989, 995 n.6 (8th Cir. 2020) (noting that SSR 16-3p "largely changes terminology rather than the substantive analysis to be applied" when evaluating a claimant's subjective complaints).

B.   ALJ's Decision

In his written decision, the ALJ found that Watt had not engaged in substantial gainful activity since November 30, 2020, the alleged onset of her disability. (Tr. 25) The ALJ found that Watts had the following severe impairments: obesity; fibromyalgia; osteoarthritis of the right ankle and adhesive capsulitis of the left shoulder. The ALJ found the following non-severe impairments: hypertension; diabetes mellitus; hyperlipidemia; gastroesophageal reflux disease; hypothyroidism; depression; and anxiety. (Tr. 25) The ALJ found that Watts did not have any limitations in understanding, remembering, or applying information or in interacting with others. (Tr. 25-26) The ALJ concluded that Watts had only mild limitations in concentrating, persisting, or maintaining pace and no limitation in adapting or managing oneself. (Tr. 26-27) The ALJ determined that Watts' impairments or combination of impairments did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14.) The ALJ found Watts to have the residual functional capacity (RFC) to perform sedentary work with the following limitations:

> can occasionally push using right lower extremity, occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds' occasionally balance and crouch, frequently stoop, kneel, and crawl. The claimant can occasionally stoop and crawl. The claimant can occasionally reach overhead and frequently reach in front, and/or laterally using the left, non-dominant upper extremity. The claimant must avoid concentrated exposure to extreme cold, extreme heat, as

9

well as vibrations, and hazards such as moving machinery and unprotected heights.

(Tr. 27)  The ALJ determined that Watts is able perform her past relevant work as an Insurance Clerk.  (Tr. 32)  The ALJ noted that the vocational expert (VE) testified that Watts is able to perform her past relevant work.  (Tr. 33)  The ALJ therefore determined that Watts was not disabled within the meaning of the Social Security Act.  (Tr. 33)

C.      Watts' Objections to the ALJ's Decision

Watts asserts that the ALJ failed to fully and fairly develop the record. Watts asserts that Watts' depression, anxiety, and fibromyalgia cause her to have mental symptoms and limitations including difficulty concentrating, brain fog, and fatigue.  Watts asserts that the ALJ failed to account for these limitations in adopting an RFC that Watts was able to perform her past work as an insurance/billing clerk.

### *The record was fully and fairly developed*

The ALJ found Watts' depression and anxiety to be non-severe impairments. Watts' predominant mental limitation assertion is that she has an issue concentrating sometimes.  The ALJ found that there was no objective evidence documenting that Watts had any impaired issued with memory, understanding, concentration, or attention.  (Tr. 25-26)  This observation is supported by

10

numerous mental-status examinations of Watts that were consistently normal. The examination reports note that her depression and anxiety were being treated with medications and are well controlled and/or that she was not experiencing any anxiety or depression. (Tr. 370, 502, 505, 508, 591, 594, 596, 755, 770, and 785)

Medical consultants employed by the Commissioner reviewed Watts' medical records. Upon initial review Linda Skolnick, Psy.D. opined that Watts "is no more than mildly impaired by psychiatric MDI [Medically Determinable impairments]." This conclusion included consideration of Watts' fibromyalgia, depression, and anxiety. (Tr. 113-114) Upon a reconsideration review Michael O'Day, D.O. opined that Watts is "no more than mildly impaired by psychiatric MDI." This conclusion also included consideration of Watts' fibromyalgia, depression, and anxiety. (Tr. 130-131)

Based on this information the ALJ determined that Watts had only mild limitations in concentrating, persisting, or maintaining pace. (Tr. 26-27) A mild limitation reflects that a claimant's capacity in a given domain is "slightly limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F(2)(b). The ALJ did not include this mild limitation in Watts' RFC. This was supported by substantial evidence in the record and by case law. Castro v. Berryhill, No. 4:17-CV-2037-DDN, 2018 WL 3020207, at *8 (E.D. Mo. June 18, 2018) ("Moreover, the ALJ's finding was consistent with the majority of courts in this Circuit, which have generally held

11

that a mild limitation in an area of mental functioning requires no corresponding limitation in the RFC.  See, e.g., Young v. Colvin, No. 4:13CV426 CDP, 2014 WL 942942, at *15 (E.D. Mo. Mar. 11, 2014) (the claimant's non-severe mental impairments did not impose any work-related limitations)").

However, the Commissioner's rulings recognize that although non-severe impairments standing alone may not impose work limitations, they might impose limitations when considered with a claimant's other impairments.  See 20 C.F.R. § 404.1545(a)(2).  Watts asserts that the ALJ failed to consider Watts' non-severe mild limitation in the area of concentration in combination with Watts' severe limitation caused by her fibromyalgia.  Watts argues that cumulative impact of her occasional brain fog, trouble concentrating, and fatigue caused by her fibromyalgia in combination with her mild non-severe limitations caused by her depression and anxiety were not expressly addressed by the ALJ in reaching his RFC determination.

The ALJ did expressly acknowledge that he must consider all of a claimant's impairments, including impairments that are not severe, in determining a claimant's RFC.  (Tr. 24)  The ALJ's analysis considered Watts' claims of concentration issues which necessarily included concentration and brain fog issues that may be caused by fibromyalgia.  The record does not contain objective evidence that Watts' report of brian fog and fatigue were severe enough to interfere

12

with her mental functioning.  Moreover, the ALJ is not required to list and reject every possible limitation.  Nash v. Comm'r, Soc. Sec. Admin., 907 F.3d 1086, 1091 (8th Cir. 2018).   The fact that the ALJ did not expressly address Watts' concentration issues caused by fibromyalgia in combination with her mild concentration issues caused by her depression and anxiety does not mean that the ALJ did not consider this evidence.  Norris v. Colvin, No. 1:12CV0216 TCM, 2014 WL 1056792, at *17 (E.D. Mo. Mar. 19, 2014) ("An ALJ does not, however, fail in her duty to assess a claimant's RFC merely because the ALJ does not address all areas regardless of whether a limitation is found. … Instead, an ALJ who specifically addresses the areas in which she found a limitation but is silent as to those areas in which no limitation is found is believed to have implicitly found no limitation in the latter.)  The ALJ's analysis of Watts' broad functional analysis of mental functioning (the Paragraph B criteria) (Tr. 25-26) is supported by substantial evidence that Watts does not have more than a mild limitation in this area and is the basis for the ALJ not including any mental limitations in Watts' RFC.  As a result, I find that the ALJ's determination regarding Watts' mental limitations is supported by substantial evidence in the record and will be affirmed.

## Conclusion

Based on the record as a whole in this case, I find that the ALJ's decision finding Watts is able to perform her past relevant work is supported by substantial

evidence in the record.

Accordingly,

**IT IS HEREBY ORDERED that** the final decision of the Commissioner of Social Security is affirmed.

**IT IS FURTHER ORDERED that** The Clerk of Court shall substitute Leland Dudek, Acting Commissioner of Social Security, as the defendant in this matter.

A separate Judgment is entered herewith.

                                                RODNEY W. SIPPEL
                                                UNITED STATES DISTRICT JUDGE

Dated this 17th day of March, 2025.